UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID S. PITTINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-cv-397-PLR-CCS |
| | ) | |
| GREAT SMOKY MOUNTAIN LUMBERJACK FEUD, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, Standing Order 13-02, and the Order [Doc. 88] of the District Judge.

Now before the Court is the Plaintiff's Motion for Attorney Fees and Litigation Expenses [Doc. 78]. The Defendant has filed a Response [Doc. 82], objecting to the Motion, and the Plaintiff has filed a Reply [Doc. 84]. The Court has reviewed all the filings and the exhibits and finds that oral argument is not necessary. Accordingly, the Court **RECOMMENDS** that the Plaintiff's Motion [**Doc. 78**] be **GRANTED IN PART AND DENIED IN PART.** Specifically, the Court recommends that the Plaintiff be awarded $98,526.67 in attorney's fees and $3,330.10 in litigation expenses.

## I. BACKGROUND

This case was originally filed in Sevier County Circuit Court and later removed [Doc. 1] to this Court on August 22, 2014. The Complaint alleged that the Plaintiff was an employee of the Defendant, initially working as an assistant box office manager. [*Id.* at ¶ 6]. The Complaint stated that the Plaintiff has a debilitating spinal disease that substantially interferes with his ability to sit and stand and that due to various pieces of metal in his body, he cannot tolerate cold

conditions. [*Id.* at ¶ 7]. The Complaint alleged that the Plaintiff notified the Defendant of this condition and his limitations upon being hired. [*Id.*]. In July 2012, the Plaintiff's wife, also the Defendant's employee, filed a sexual harassment and sex discrimination complaint with the Defendant arising from her supervisor's alleged repeated sexual advances and sexual assault. [*Id.* at ¶ 8]. The Defendant discussed with the Plaintiff the specific details of the supervisor's actions toward his wife and suggested that the Plaintiff's wife was a willing participant in the activities giving rise to her complaint against the supervisor. [*Id.* at ¶¶ 9-10]. The Complaint continued that the Plaintiff rejected the Defendant's assertion and provided additional evidence and witnesses to support his wife's claims. [*Id.* at ¶ 10].

The Complaint stated that on September 28, 2012, the Plaintiff's supervisor reassigned him to a job located outside in an adjacent structure known as "the shack," and the Plaintiff's new title was "shack manager." [*Id.* at ¶ 11]. The Complaint stated that on September 29, 2012, the Plaintiff made a written request to the Defendant for an accommodation, including a padded chair, a rubber mat for standing, and a heater for cold days, so that he would be able to perform his new job in the shack. [*Id.* at ¶ 12]. The Complaint asserted that the Defendant did not respond, nor did it engage in the interactive process to determine which, if any, accommodations it would provide. [*Id.*]. The Complaint averred that the Plaintiff was aware that the assignment to the shack, with its lack of heat and protection from the elements, isolation from other employees, diminished job responsibilities, and reduction in job status among work peers, was used as a method of disciplining and/or segregating employees. [*Id.* at ¶ 14]. The Complaint continued that soon after being transferred, the Defendant began cutting the Plaintiff's hours, resulting in less pay. [*Id.* at ¶ 13]. The Defendant also refused to provide him with a heater and a padded chair, thereby guaranteeing that he would be in physical pain while stationed in the shack. [*Id.*].

The Complaint continued that on September 29, 2012, and October 1, 2012, the Plaintiff sent text messages to the Defendant expressing his frustration at having his hours cut, and he attributed such actions to his wife's complaints of sexual harassment. [*Id.* at ¶ 15]. On October 8, 2012, the Plaintiff's supervisor brought a small heater to the shack, and a couple of hours later, terminated the Plaintiff. [*Id.* at ¶ 16].

The Complaint alleged violations of the Americans with Disabilities Act as Amended ("ADAAA") [*Id.* at ¶¶ 17-21]. In addition, the Complaint also alleged that the Plaintiff's assistance, participation, and involvement in his wife's sexual harassment and sex discrimination complaint were protected activities and that the Defendant began engaging in hostile and retaliatory behavior soon after the Plaintiff's wife filed her complaint. [*Id.* at ¶¶ 22-29]. The Complaint alleged violations of Title VII and the Tennessee Human Rights Act ("THRA"). [*Id.*]. Finally, the Complaint requested the following relief: (1) a declaratory judgment that the Defendant violated the ADAAA, Title VII and the THRA, and that such violations were willful; (2) back pay; (3) front pay; (4) compensatory damages; (5) non-pecuniary damages; (6) punitive damages; (7) post-judgment interest; (8) an order that the Defendant report to the Court its status and manner of compliance with applicable laws; and (9) an award of attorney's fees.

Both parties engaged in a healthy motion practice. *See* [Docs. 11, 12, 17, 25, 29, and 37]. For instance, both parties filed dispositive motions, which were denied. [Doc. 42]. The case ultimately proceeded to trial before a jury. The trial continued for four days [Docs. 64-67]. The Defendant moved for a directed verdict, and the District Judge granted the motion as to the Plaintiff's ADAAA claim. [Doc. 66]. Subsequently, the jury found that the Plaintiff did establish his THRA and Title VII claims against the Defendant by a preponderance of evidence. [Doc. 68]. The jury did not award compensatory damages but awarded $10,000.00 in back pay. [*Id.*]. The

jury found that the Plaintiff did not establish his claim for punitive damages against the Defendant by a preponderance of the evidence. [*Id.*].

Following the trial, the Plaintiff filed a Motion to Alter Judgment [Doc. 76], and the instant Motion for Attorney's Fees. On April 18, 2017, the District Judge granted in part the Plaintiff's Motion to Alter Judgment [Doc. 87] by allowing prejudgment interest, but the District Judge denied Plaintiff's request for a new trial on damages, including back pay and front pay. The Motion for Attorney's Fees was referred [Doc. 88] to the undersigned on April 18, 2017.

**II.     POSITIONS OF THE PARTIES**

The Plaintiff requests a total of $163,443.00 in attorney's fees and costs in the amount of $12,051.28. Specifically, the Plaintiff requests compensation for 682.2 billable hours at the hourly rates of $275.00 for Attorney Nelson, $205.00 for Attorney Towe, and $85.00 for Ashley James, a paralegal. The Plaintiff asserts that he is the prevailing party and is entitled to an award of attorney's fees and that the fees he seeks are reasonable. The Plaintiff argues that the number of hours spent is reasonable and that his counsel has reviewed and liberally reduced the hours claimed to ensure that the time spent in this case was not "excessive, redundant, or otherwise unnecessary." [Doc. 79]. In addition, the Plaintiff claims that the hourly rates are reasonable. The Plaintiff further states that there are other indicia of reasonableness in this particular case. For instance, the Plaintiff contends that his counsel represented him for three-and-a-half years, his attorneys had to turn away a potential client because they could not return the client's call until the following week, the firm's resources were put on hold during the litigation, and the timesheets submitted in support of the fee request reflect significant and liberal reductions from the actual time spent on the case. The Plaintiff also asserts that there are no special circumstances to warrant deviating from the lodestar method.

The Plaintiff also requests costs and litigation expenses. He continues that he is also entitled to recover the legal fees that he incurs litigating the fee issue and that once the parties fully brief this issue, he will submit additional timesheets demonstrating these facts. Further, the Plaintiff asserts that counsel did not double bill for work spent pursuing his case and his wife's case. The Plaintiff explains that he had to discover the same facts to demonstrate his reasonable belief that the Defendant retaliated against his wife and thus the complete depositions, including their corresponding expenses, were reasonably and actually needed to succeed in the Plaintiff's case. He asserts that the time spent on the ADAAA claim should not be reduced. The Plaintiff claims he has achieved tremendous, if not perfect, success.

The Defendant acknowledges that the Plaintiff is the prevailing party. However, the Defendant asserts that the fee award sought is based on unreasonable rates when compared to similar awards in other cases. The Defendant argues that Attorney Nelson's hourly rate should be $225.00 and that Attorney Towe's hourly rate should be $190.00. The Defendant contends that the fee award sought by the Plaintiff is also based on excessive hours. The Defendant continues that while Plaintiff's counsel claims he prorated the time with Pamela Pittington's case, the billing entries provide otherwise. For instance, the Defendant asserts that time spent mediating and conducting depositions in both cases was not prorated. The Defendant contends that it is clear that the Plaintiff is attempting to recover payment for work performed in relation to his wife's case. The Defendant recommends that the time be prorated at least 50% but suggests 65% because a majority of the facts relate to the Plaintiff's wife's case.

Further, the Defendant submits that the fee award should be reduced to reflect the limited success at trial. Specifically, the Defendant asserts that the $10,000.00 award of back pay by the jury represents approximately 4.4% of the original amount sought by the Plaintiff in his Complaint.

The Defendant suggests that the Court reduce the fee award by 50% to account for Plaintiff's limited success. In addition, the Defendant argues that special circumstances exist that render Plaintiff's recovery of the entire fee award sought unjust. For instance, the Defendant claims that it was the Plaintiff's own actions, through his counsel's unwillingness to participate in meaningful settlement negotiations, that resulted in incurring additional attorney's fees and costs. Further, the Defendant asserts that the Plaintiff should not be able to reap the benefits of representing a husband and wife in two interrelated retaliation claims by frontloading time and expenses on the first case to be tried in an effort to avoid the chance of not recovering part of the costs in a second subsequent trial. In addition, the Defendant contends that the Plaintiff incurred substantial attorney's fees relating to his motion for summary judgment despite the highly unlikelihood of success in filing such a motion, especially since the EEOC concluded that the information the Plaintiff supplied in support of his Charge of Discrimination did not support a finding that Defendant violated Title VII. Finally, the Defendant claims that the Plaintiff has approached this litigation with an attitude of forcing it to litigate at all costs.

With respect to costs, the Defendant asserts that the costs requested in the Motion, relate to Plaintiff's wife's case. Specifically, the Defendant argues that the costs for depositions, copy charges, meals, and the Seattle trip should be prorated.

The Plaintiff filed a Reply asserting that the Defendant's arguments are assaultive to the public policy underlying Title VII, THRA, and to decades of court rulings. The Plaintiff asserts that whether deserved or not, the Defendant will benefit from retaliating against two people instead of one—particularly husband and wife. The Plaintiff argues that the Defendant will benefit if the Plaintiff's wife succeeds in her case. The Plaintiff continues that the Court should not penalize the parties for being efficient and that Plaintiff's counsel prorated his time between this case and

Plaintiff's wife's case. The Plaintiff states that the Defendant obfuscated any separation between the cases and that the settlement demand included attorney's fees and costs for the Plaintiff's case alone, not his wife's case. Further, the Plaintiff asserts that the hourly rates are reasonable, Defendant's arguments regarding the Plaintiff's success at trial are misguided and wrong, and Defendant's arguments relating to other circumstances that warrant reduction are nothing more than a smoke screen.

### III. ANALYSIS

In the present matter, the Court notes that the parties have already agreed that the Plaintiff is entitled to attorney's fees. Thus, the only determination for this Court is whether the requested amount of attorney's fees is reasonable. Courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.* at 415-16. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 416 (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

With the above analysis in mind, the Court will turn to the Plaintiff's request for attorney's fees in the instant matter and the Defendant's objections thereto.

### A. Hourly Rates

As an initial matter, the Defendant does not challenge Ashley James's hourly rate of $85.00, and the Court finds her rate, as a paralegal, to be reasonable. The Defendant, however, asserts that Attorney Nelson's and Attorney Towe's hourly rates are unreasonable. As mentioned above, Attorney Nelson's hourly rate is $275.00, and Attorney Towe's hourly rate is $205.00. The Defendant argues that such hourly rates are not reasonable based on similar awards and that the rates should be $225.00 for shareholder attorneys and $190.00 for associates.

The Court disagrees with the Defendant. The Court has reviewed the Declarations filed in this case and finds the hourly rates of $275.00 and $205.00 to be reasonable. With respect to Attorney Nelson, he received his law degree in 2006, and he is admitted in all federal district courts in Tennessee, as well as the Fifth and Sixth Circuit Courts of Appeals. [Doc. 79-1 at ¶ 2]. After receiving his license, he began working for a law firm, practicing almost exclusively employment law. [*Id.* at ¶ 5]. In 2010, he worked for another law firm and then left to start his own practice, in which 90% of his practice is devoted to plaintiff-side employment litigation. [*Id.* at ¶ 8]. He has taken well over 100 employment related cases and is notably active within the legal community. [*Id.* at ¶¶ 9-15]. Further, the Plaintiff has submitted several Declarations that support Attorney Nelson's hourly rate. [Docs. 79-2, 79-3, 79-4, 79-5, 79-6]; *see also Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011) (noting that a district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests"). Finally, this hourly rate reflects Attorney Nelson's contribution in this case, in which he served as lead counsel. Accordingly, the Court recommends that Attorney Nelson's hourly rate of $275.00 be found to be reasonable for his work in this case.

The Court also finds Attorney Towe's rate of $205.00 per hour to be reasonable. Attorney Towe received her license to practice law in 2014, and she worked as a law clerk for Judge Vescovo in the Western District of Tennessee. [Doc. 79-1 at 5]. She has practiced employment law almost exclusively. [*Id.*]. The Court finds that her rate is such that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The Court finds Attorney Towe's hourly rate also reflects her contribution to this case, such as drafting several motions and participating at the trial. Accordingly, the Court recommends that the hourly rates billed by Plaintiff's counsel not be reduced.

### B. The Number of Hours Billed

As an initial matter, the Plaintiff requests $163,443.00 in attorney's fees and $12,051.28 in costs. In his Motion, the Plaintiff states that he will submit additional timesheets once the parties fully brief the issues with respect to attorney's fees. The Plaintiff's Motion was filed on April 2, 2016, and referred to the undersigned on April 18, 2017. The briefing on this issue has been complete for over a year, and the Plaintiff has not submitted any additional timesheets or supplemental filings. Further, in a footnote, the Defendant states that it may be necessary for the Court to rule on the Motion to Alter or Amend prior to ruling on the attorney's fees and to allow the parties to submit supplemental briefs based on the Court's ruling. No party has moved to file additional briefs, and the Order referring the issue of attorney's fees was entered approximately four months ago. Accordingly, the Court will not consider additional fees or arguments that were not presented in the instant filings.

The Defendant argues that the hours billed in this case are excessive and requests that the hours be reduced. The Court will address each objection to the number of hours.

9

1.  **Prorated Time**

The Defendant asserts that the Plaintiff's timesheets reflect work performed in *Pamela J. Pittington v. Great Smoky Mountain Lumberjack Feud, LLC,* No. 3:14-cv-466. Specifically, the Defendant emphasizes that the time spent at mediation and the time taking several depositions involved both cases and should have been prorated by the Plaintiff. The Defendant recommends that the time be prorated by at least 50% but suggests 65% be attributed to Pamela Pittington's case because a majority of the facts related to her case.

The Plaintiff replies that the Defendant benefits because it will only have to pay one time even if Pamela Pittington is successful. The Plaintiff asserts that the Defendant "will get even more bang for its buck if Ms. Pittington wins at trial because [Defendant] will not have to pay twice despite being found liable for fees and expenses." [Doc. 84 at 3]. The Plaintiff states that "[if] Ms. Pittington would have hired separate counsel and were to succeed, her attorney would be entitled to all reasonable fees and expenses just as Mr. Pittington's counsel is now." [*Id.*]. Further, the Plaintiff asserts that the Court should not penalize the parties for being efficient. The Plaintiff continues that he did prorate the time and that he and his wife will only seek to recover one time for the same tasks if Pamela Pittington is successful in her case. Finally, the Plaintiff states that it was the Defendant who thoroughly obfuscated any separation between Plaintiff's case and his wife's case.

The Court has reviewed the filings and finds that the hours billed on the Plaintiff's case for tasks related to his wife's case should be reduced, particularly in light of the limited success in either case. As mentioned above, the Plaintiff asserts that if Ms. Pittington wins, the Defendant will only have to pay once. First, Ms. Pittington did not win her case. Instead, summary judgment was entered in favor of the Defendant, so the Plaintiff's argument is moot on this point. *See*

*Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, No. 3:14-cv-466 [Doc. 340]. In any event, the Court finds it unreasonable to require the Defendant to pay Plaintiff for preparing and taking all the depositions, especially since the issues in the wife's cases were different than the present matter (*i.e.,* whether Pamela Pittington's transfer to the box office was a demotion, whether the removal of her managerial duties was retaliation, and whether she was terminated or constructively discharged).

The Plaintiff asserts that the Court should not penalize efficiency. The Court, however, is not penalizing efficiency, but instead, promoting billing discretion when there are two different clients, albeit married, with two separate cases. The Court is merely unwilling to recommend that the Defendant pay the entire costs of the depositions and preparations for depositions when much of the time spent in depositions was related to Pamela Pittington's case and not the Plaitniff's case. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, No. 3:14-cv-466 [Doc. 16-5 at 6] (Deposition of William Mapp) ("My entire time that I was there I was, for the most part, in Pam's chain of command. And then for a very short time in David's."). Further, Pamela Pittington used several depositions in support of her motion for summary judgment, but the time for preparing and taking the depositions was billed to the Plaintiff. The Court finds counsel's practice of billing all the time for depositions to the Plaintiff's case unreasonable.

The Plaintiff submits that his counsel prorated the time for his wife's case and that "if the work primarily benefited Ms. Pittington's case, it is not reflected at all on these timesheets even though Mr. Pittington secondarily benefited." [Doc. 84 at 4]. The Court has reviewed the billing entries and only one entry has been truly prorated in this case. *See* [Docs. 79-1 at 23]. Further, as the Defendant emphasizes, the time spent mediating both cases was billed to the Plaintiff. *See* [Doc. 79-1 at 18]. Accordingly, the Court recommends the following entries be prorated:

| Date | Billing Entry | Attorney | Total Time | Reduction | Awarded |
|---|---|---|---|---|---|
| 7/16/13 | Travel to/from Federal Bldg. and appeared for EEOC mediation[1] | JDN | 6 | 50% | 3 |
| 10/22/13 | TC from K. Lee re: discussion of whether to move claim to investigatory, discussion of state suit, etc. | JDN | .2 | 50% | .1[2] |
| 3/3/15 | TC from Al Holifield re: discussion of proceeding with depositions, ability to consolidate, location of witnesses, procedure, and dates | JDN | .4 | 50% | .2 |
| 3/17/15 | Letter from A. Holifield re: possibility of going to AK for depositions | JDN | .2 | 50% | .1 |
| 3/19/15 | TC to client re: discussion of expenses, whether to travel to AK for depos, strategy, etc.; TC to A. Holifield re: same; em. To client re: | JDN | .5 | 50% | .25[3] |

---

[1] The Defendant requests that the .8 billed on July 15, 2013, to prepare for EEOC mediation also be reduced. *See* [Doc. 79-1 at 18]. The Court will not make this recommendation as there is no indication that the .8 included preparing for Plaintiff's wife's case. Further, the Defendant asserts that "there are other entries indicating work performed in relation to the EEOC mediation and the subsequent EEOC investigation" and entries involving the scheduling of depositions that should be reduced. The Defendant does not identify any specific entries, and the Court will not review line-by-line in an attempt to determine what other specific time entries the Defendant objects.

[2] The Court notes that this entry states, "TIME PRORATED." However, the time does not actually appear to have been prorated. For instance, the Court has compared this entry with an entry made on April 9, 2015. [Doc. 79-1 at 23]. With respect to the April 9 entry, the time is clearly prorated as the total time reflected in the description is 7 hours, but counsel only billed 3.5 hours. On the October 22, 2013 entry, the total time is .2 hours, and counsel billed .2 hours. Further, the Defendant raised this issue in its response and the Plaintiff did not reply to this argument.

[3] This entry also states that the time was prorated. *See supra* n. 2.

| | | | | | |
|---|---|---|---|---|---|
| | confirming agreement for incurring travel exp. | | | | |
| 3/30/15 | TCs from A. Holifield re: confirming depositions details of Pls and discussing procedure for taking Alaska deps. | JDN | .2 | 50% | .1[4] |
| 4/13/15 | Continued analysis of all file docs re: facts, statements and exhibits for W. Mapp's and M. Downs's depositions | JDN | 3 | 50% | 1.5 |
| 4/13/15 | Cont. preparing depo outline of W. Mapp | JDN | 2.1 | 50% | 1.05 |
| 4/13/15 | Conf. with David and Pam Pittington re: depo prep | JDN | 3.3 | 50% | 1.65 |
| 4/19/15 | Began preparing for R. Scheer's dep. | JDN | 3.4 | 50% | 1.7 |
| 4/21/15 | Continued preparing for depo. of R. Scheer | JDN | 2.8 | 50% | 1.4 |
| 4/22/15 | Finished preparing outline for depo. of R. Sheer | JDN | 7.4 | 50% | 3.7 |
| 4/24/15 | Participated in depositions of R. Sheer and S. Sheer, incl. confs. With OC | JDN | 11.6 | 50% | 5.8 |
| 4/25/15 | Continued depo of S. Sheer | JDN | 4.8 | 50% | 2.4 |
| 6/5/15 | Began analysis of R. Scheer's depo to assist in preparing for M. Downs' and W. Mapp's depos | JDN | 1.0 | 50% | .5 |
| 6/8/15 | Prepared for depo. of M. Downs, incl. analysis of other depo transcripts, exhibits, and EEOC docs | JDN | 4.4 | 50% | 2.2 |
| 6/9/15 | Appeared for deposition of M. Downs; finalized preparation for W. Mapp's dep, incl. analysis of prior depo transcripts for issues to discuss with W. Mapp | JDN | 10.9 | 50% | 5.45 |

---

[4] This entry also states that the time was prorated. *See supra* n. 2.

| 6/10/15 | Appeared for depo of W. Mapp, incl. post-depo discussion with clients re: other witnesses to contact, potential for mediation, taking other depos, etc. | JDN | 8.6 | 50% | 4.3 |
| 6/10/15 | Preparation of summary of 200 page deposition of William Mapp | ALJ | 2.2 | 50% | 1.1 |
| 12/15/15 | Prepared for Deposition of Z. Yank | JDN | 1.4 | 50% | .7 |
| 1/11/16 | Cont. preparing for rescheduled depo of Z. Yank | JDN | .9 | 50% | .45 |
| 1/12/16 | Travel to/from and appeared for depo of Z. Yank | JDN | 2.1 | 50% | 1.05 |

Further, the Court notes that counsel billed 13.2 hours to travel to Nashville and then to Seattle, Washington for depositions. It is unclear as to why counsel traveled to Nashville for a flight, instead of flying out of Knoxville, and without any explanation, the Court will reduce the 13.2 hours to 8 hours.[5] Accordingly, the Court recommends that 42.8 hours be deducted from Attorney Nelson's total number of hours and that 1.1 hours be deducted from Ashley James's total number of hours. The Court's recommendation results in a reduction of $11,863.50 from the total amount requested ($163,443.00), for an initial total of $151,679.50 as reasonable attorney's fees.[6]

**2. Reduction to Reflect Limited Success**

The Defendant asserts that the attorney's fees should be reduced due to the limited success at trial. The Defendant explains that the Plaintiff's Complaint sought damages for violations of Title VII, the THRA, and the ADAAA, and requested back pay, front pay, compensatory damages,

---

[5] The Court finds 8 hours more reasonable given counsel's travel time of 7 hours and 10 minutes [Doc. 79-1 at 62], in addition to waiting to board the plane.

[6] The Court arrives at this calculation as follows: $275.00 x 42.8 hours = $11,770.00; $85.00 x 1.1 = $93.50. Thus, the total reduction is $11,770.00 + $93.50 = $11,863.50.

non-pecuniary damages, punitive damages, and post-judgment interest, not to exceed $225,000. The Defendant continues that the Court entered directed verdict on the ADAAA claim and that following the trial, the jury found that the Plaintiff established his Title VII and THRA claims and returned a verdict of only $10,000.00 in back pay. The Defendant states that the jury did not award the Plaintiff front pay, compensatory damages, non-pecuniary damages or punitive damages and that the $10,000.00 award represents 4.4% of the amount sought in the Complaint. The Defendant states during closing argument, the Plaintiff requested $40,000.00 in back pay. The Plaintiff replies that the value of a person's civil rights is not measured monetarily. The Plaintiff also emphasizes that the jury found in his favor on both claims it considered.

As an initial matter, the Court notes that the total amount of attorney's fees requested in this case ($163,442.00) is approximately *sixteen times* the amount the Plaintiff was awarded ($10,000.00). *See H.D.V.-Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 382 (6th Cir. 2016) (noting that the "aim of such fees is to aid civil rights, not attorneys") (other citations and quotations omitted). The Court finds that some reductions are warranted due to the limited success in this case. For instance, the Plaintiff filed an unsuccessful Motion for Summary Judgment, in which approximately 78.8 hours were billed for researching issues and drafting the motion. In addition, the Court has reviewed the time spent on the Plaintiff's motion for leave to file a sur-reply and memorandum in support and finds such time unreasonable, given that the Court only allows supplemental briefs to call the Court's attention to developments occurring after the reply brief has been filed and with the Court's permission. *See* E.D. Tenn. L.R. 7.1(d).[7] Here, the Court

---

[7] Specifically, the Court is referring to the entries dated November 24, 2015, November 25, 2015, December 8, 2015, December 23, 2015, and December 28, 2015. Plaintiff's counsel billed 9.4 hours (3.6 hours on November 24 and 5.8 hours on December 8) to prepare a two page motion and a four page memorandum in support; 8.8 hours on November 25 for the proposed sur-reply that was not filed; and 5.2 hours (1.1 on December 23 and 4.1 on December 28) to file a

15

did not give the Plaintiff permission to file the sur-reply and the filings were not helpful to the Court in reaching its decision. *See* [Doc. 42].

Furthermore, as the Defendant argues, the Court dismissed the Plaintiff's ADAAA claim on directed verdict. With respect to the Plaintiff's Title VII and THRA claims, the Plaintiff succeeded on these claims but was only awarded back pay in the total amount of $10,000.00. The Plaintiff did not receive any front pay, compensatory damages, non-pecuniary damages or punitive damages. Based on the results of this case, the Court simply cannot justify, and finds unreasonable, to award counsel sixteen times the amount awarded to the Plaintiff. *See Farrer v. Hobby*, 506 U.S. 103, 114, (1992) (explaining that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *see also Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 556 (6th Cir. 2017) ("Indeed, a trial court abuses its discretion when it does *not* consider the relationship between the fee awarded and the success obtained.").

Further, given the result, the Court finds that the time billed for preparing for trial was excessive. For instance, counsel began billing for preparing the proposed pretrial order on January 14, 2016. [Doc. 79-1 at 30]. Not including any of the time spent for jury instructions, counsel billed almost 200 hours for drafting motions in limine and preparing for trial (including six hours billed for a mock jury deliberation/focus group) [Doc. 79-1 at 30]. While the Court certainly commends preparation, the Court finds that counsel spent an excessive amount of time on claims that were quite limited in their success.

---

reply to the defendant's response in opposition to the motion. None of these filings were helpful to the Court in its decision.

16

The Defendant also asserts that special circumstances exist that warrant reducing the fees in further. Specifically, the Defendant asserts that it offered $5,000.00 to David Pittington and $5,000.00 to Pamela Pittington to settle their claims. The Defendant states that the Plaintiff rejected this offer and made nefarious accusations during the mediation against Rob Scheer, who was present at the mediation. The Defendant states that it later offered to settle each claim for $7,500.00, but the Plaintiff rejected such offer and countered with $80,000.00 each. The Defendant states that the Plaintiff never made a true settlement demand and that the Plaintiff approached the case with the attitude of forcing the Defendant to litigate. The Plaintiff objects to the Defendant's assertions and states that the Defendant has produced nothing to support the veracity of such assertions. The Plaintiff states that the Defendant did not offer anything at the mediation and that the Defendant has not offered any special circumstances that support a reduction.

The Court has considered both counsels' versions of the settlement discussions, and the Court will not engage in counsels' quarrel as to what was said, or not said, during their attempts to settle this case. The Court has already recommended reductions in the attorney's fees and finds the above reductions reasonable in light of the particular circumstances.

Based on the above, the Court recommends an additional 35% reduction ($53,052.83) in the overall attorney's fees. This recommendation represents time reductions for the Plaintiff's unsuccessful ADAAA claim, the limited success on the Title VII and THRA claims, the excessive hours preparing for and trial and the unnecessary filings. Further, the Court notes that a 35% reduction results in a total award of $98,526.67 in attorney's fees,[8] which the Court finds to be reasonable in this case. The Court finds that this total award fairly represents the time and labor

---

[8] The Court arrives at this calculation as follows: $151,579.50 - $53,052.83 = $98,526.67.

required in this case, the novelty and difficulty of the questions presented, and the amount involved and the results obtained. Finally, the Court further notes that this reduction still results in counsel receiving approximately ten times the amount that Plaintiff was awarded.

**C.     Costs**

The Plaintiff also requests $12,051.28 in costs and litigation expenses. The Court notes that the Plaintiff has included in his Motion costs that were also submitted in the Bill of Costs. The District Judge has stayed any action on the Bill of Costs [Doc. 92], and therefore, the undersigned will only address the litigation expenses/costs that are not included in the Plaintiff's Bill of Costs. Specifically, the Plaintiff requests that the following items be reimbursed: postage; trial/office supplies; meals; Seattle trip for depositions of Rob and Shelia Scheer; mock jury/focus group; parking; and mileage. With respect to these items, the Plaintiff requests a total of $3,335.69.

Out of the above items, the Defendant objects to only the meals ($120.33) and the Seattle trip ($1,964.79). With respect to both items, the Defendant asserts that they should be prorated, with 65% of such expenses allocated to Ms. Pittington's case.

Courts are permitted to award expenses that are "incidental and necessary . . . in furnishing competent representation." *Lankford v. Reladyne, LLC*, No. 1:14-CV-682, 2016 WL 3640691, at *4 (S.D. Ohio June 29, 2016) (other quotations and citations omitted). Such expenses are different than the costs awarded pursuant to 28 U.S.C. § 1920 and include "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Id.*

The Court has considered the parties' argument, and it will not recommend that the above expenses be reduced, except the meal purchased ($5.49) on April 15, 2015, the date of Pamela Pittington's deposition. [Doc. 79-1 at 49]. Unlike time spent preparing for depositions and taking depositions, the litigation expenses at issue did not increase due to Pamela Pittington's claims. In

18

other words, such expenses would have been incurred even if Pamela Pittington's lawsuit had not been filed. As the Plaintiff emphasizes, Rob and Shelia Scheer testified at his trial, making counsel's decision to take their depositions reasonable.

Accordingly, the Court will recommend that the Plaintiff be awarded $3,330.10 in litigation expenses. *See id.* at *5 (stating that travel costs, including mileage and parking, were reasonable and appropriately taxed as costs for depositions, the final pretrial conference, and trial); *Bryant v. Dollar Gen. Corp.*, No. 3:05-cv-840, 2007 WL 1875825, at *6 (M.D. Tenn. Jun. 26, 2007) ("While amounts paid for meals, parking and mileage are not costs within the meaning of Section 1920, they may be awarded as reasonable out-of-pocket litigation expenses which would be charged to a fee-paying client.").

## IV.   CONCLUSION

For the reasons explained above, the Court **RECOMMENDS**[9] that the Motion for Attorney's Fees and Litigation Expenses [**Doc. 78**] be **GRANTED IN PART AND DENIED IN PART**.  The Court recommends that the Plaintiff be awarded $98,526.67 in attorney's fees and $3,330.10 in litigation expenses.   With respect to attorney's fees, the Court's calculation is explained as follows: $163,443.00 – $11,643.50 (reduction in hours) = $151,799.50.  The Court further reduces this number by 35% ($53,052.83), resulting in a total award of $98,669.67 for attorney's fees.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[9] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).